IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

                    Plaintiff,

vs.                                                    Case No. 07-10073-01-JTM

RAFAEL LOPEZ,

                    Defendant.

MEMORANDUM AND ORDER

        The present motion arises on defendant's motion to suppress evidence (Dkt. No. 120)

obtained during an allegedly illegal traffic stop.

_1.  Factual Background:_

        On March 17, 2007, at approximately 5:20 p.m., Kansas Highway Patrol Trooper J. L.

Duffey stopped defendant on Interstate 70 Highway in Thomas County, Kansas.  Trooper Duffey,

while traveling westbound, had observed a white Kia four door SUV traveling eastbound, with

its driver slumped over the steering wheel.  Concerned that the driver was sleepy or impaired, the

Trooper turned through an opening in the median barrier and followed the vehicle approximately

one quarter of a mile.  Trooper Duffy clocked the vehicle's speed at 60 m.p.h. in a 70 m.p.h.

zone.  At that time, the Trooper observed the vehicle cross the fog line onto the rumble strips and

then suddenly jerk back into the driving lane.  The vehicle drifted on two occasions, though the

road was dry and in good condition and the weather was clear.  Trooper Duffey ultimately

stopped the vehicle for a violation of K.S.A. § 1522, for failure to maintain a single lane and to check the driver for fatigue and/or intoxication.

Trooper Duffey approached the vehicle on the driver's side and explained to the defendant that he wanted to ensure that the defendant was not tired or intoxicated.  He then explained to defendant that he had observed the vehicle drift across the fog line twice.  In return, the defendant provided his driver's license, insurance, and rental agreement for the vehicle.  The rental agreement stated that the defendant was the renter; that the vehicle was picked up at the Denver airport on March 17, 2007 at 9:00 a.m.; and that the vehicle was to be returned to the Chicago airport on Monday, March 19, 2007 at 9:00 a.m.  Defendant also advised Trooper Duffey that he was coming from Denver, that he was on vacation, that he had been to Denver for three days, that his family flew back to Chicago and that he had to work in Kansas City, and that he was in "construction."  While questioning defendant, Trooper Duffey noticed that defendant was extremely nervous, that his hands were visibly shaking, and that in the short time of the initial encounter, defendant built up a sweat on his brow and upper lip.  Defendant also allegedly looked away in answering questions.

Trooper Duffey ultimately filled out a warning for failing to maintain a single lane.  He also checked defendant's license and ran a check for wants and warrants.  Thereafter, he re-approached the defendant on the driver's side of the vehicle and returned defendant's paperwork. Trooper Duffey explained that he was issuing a warning and advised the defendant if he was feeling sleepy to stop and get some rest.  Defendant responded that he was going to a motel, whereupon Trooper Duffey advised the defendant to have a safe trip.  At that point, Trooper Duffey walked to the rear of the vehicle and turned around.  He re-approached the driver's side

and asked the defendant if he could ask a few more questions, to which the defendant responded that it was okay.  Trooper Duffey asked a few questions regarding travel plans and asked if he was carrying anything illegal like guns or drugs.  Defendant responded that he was not.  Trooper Duffey then asked the defendant if he could search the vehicle, to which the defendant consented. The defendant exited the vehicle and stood at the front of the vehicle upon Trooper Duffey's request.

Trooper Duffey opened the back hatch of the Kia and opened a suitcase.  He found several packages wrapped in cellophane, black tape, and gray duct tape.  Through his training and experience, Trooper Duffey knew that this was how illegal drugs are packaged.  Trooper Duffey then walked a few steps to the front of the vehicle and arrested the defendant.

Following the arrest, Trooper Duffey placed the defendant on the passenger side of his patrol vehicle and read defendant his Miranda rights.  Defendant stated that he understood his rights and agreed to speak with Trooper Duffey.  Trooper Duffey asked if the packages contained marijuana, whereupon the defendant advised it was cocaine, that he was taking it to Chicago, and that the packages contained 8 kilos of cocaine.

*2.  Standard of Review and Recommendations of Law:*

For the following reasons, defendant's motion to suppress is denied.

*A.  The Stop:*

"Because an ordinary traffic stop is more analogous to an investigative detention than a custodial arrest," traffic stops are analyzed under the principles of *Terry v. Ohio*, 392 U.S. 1 (1968).  Under *Terry*, a traffic stop is reasonable if "the officer's action was justified at its inception, and [if] it was reasonably related in scope to the circumstances which justified the

3

interference in the first place." *Terry*, 392 U.S. at 20.  A "traffic stop is reasonable under the Fourth Amendment at its inception if the officer has either (1) probable cause to believe a traffic violation has occurred . . . or (2) a reasonable articulable suspicion that 'this particular motorist violated any one of the multiple of applicable traffic and equipment regulations of the jurisdiction.'" *United States v. Ozbirn*, 189 F.3d 1194, 1197 (10th Cir. 1999) (citing *Whren v. United States*, 517 U.S. 806, 810 (1996); *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) (en banc)).  Based on the present facts, Trooper Duffey properly stopped defendant. First, he possessed a reasonable articulable suspicion that the defendant violated K.S.A. § 8-1522 because the Trooper saw the defendant cross the fog line on two occasions, despite the normal road conditions. *See United States v. Brown*, No. 05-3400, 2007 WL 1241646, at *6 (10th Cir. April 30, 2007) (holding that an officer's observation of a vehicle straying out of its lane multiple times over a short distance creates a reasonable suspicion that the driver violated K.S.A. § 8-1522(a) as long as the strays could not be explained by "adverse physical conditions" such as the state of the road, the weather, or conduct of law enforcement).

Additionally, once the Trooper stopped defendant, his actions were reasonably related to the circumstances which justified the interference in the first place.  *Terry*, 392 U.S. at 20.  Here, the Trooper obtained the defendant's license, registration, insurance, ran the computer checks, as well as inquired about the defendant's travel plans, itinerary, car ownership, and issued warning tickets.  *See United States v. Mendez*, 118 F.3d 1426, 1429 (10th Cir. 1997) (in an ordinary traffic stop an officer "may run computer checks on the driver's license, the vehicle registration papers, and on whether the driver has any outstanding warrants or the vehicle had been reported stolen" without exceeding the permitted scope of a stop); *United States v. Williams*, 271 F.3d 1262, 1267

4

(10th Cir. 2001) (an officer's questions about the driver's itinerary and travel plans are within the scope of a stop); *United States v. Bradford*, 423 F.3d 1149, 1156 (10th Cir. 2005) (an officer may routinely ask about vehicle ownership during the traffic stop). Furthermore, the Trooper explained the reason for the stop and the warning tickets at the same time, along with walking back and forth between the vehicles. In total, the detention lasted no longer than nine minutes, which is reasonable within the scope of the detention.

B. *The Consensual Encounter:*

Defendant specifically argues that he did not voluntarily consent to the continued detention. "Further questioning unrelated to the initial stop is permissible if the initial detention has become a consensual encounter." *United States v. Hunnicut*, 135 F.3d 1345, 1349 (10th Cir. 1998). If a driver voluntarily consents to additional questioning, the Fourth Amendment standards of reasonableness do not apply. *United States v. Anderson*, 114 F.3d 1059, 1064 (10th Cir. 1997). In order to determine whether the communication was a consensual encounter or a seizure, "a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *United States v. Zapata*, 997 F.2d 751, 756 (10th Cir. 1993). The reasonable person test is objective. *United States v. Hill*, 199 F.3d 1143, 1149 (10th Cir. 1999). Here, the Trooper ended the traffic stop by telling the defendant to "have a nice day." The Trooper then walked away, indicating that the stop was over. When the Trooper re-approached the vehicle, he asked permission to ask more questions of the defendant, to which the defendant gave permission. On these facts, it is clear that the encounter following the detention was a consensual encounter.

5

Even assuming that the encounter was not consensual, an officer must have "an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring in order to justify detaining an individual for a period of time longer than that necessary to review a driver's license and vehicle registration, run a computer check, determine that the driver is authorized to operate the vehicle, and issue the detainee a citation." *United States v. Salzano*, 158 F.3d 1107, 1111 (10th Cir. 1998). "Reasonable suspicion is a particularized and objective basis for suspecting the person stopped of criminal activity." *United States v. Callarman*, 273 F.3d 1284, 1286 (10th Cir. 2001). "Even ambiguous behavior, susceptible to an innocent interpretation, may give rise to a reasonable suspicion of criminal activity." *Oliver v. Woods*, 209 F.3d 1179, 1188 (10th Cir. 2000). Although defendant argues that collectively the nervousness, explanation for the trip, and lack of visible tools cannot give rise to reasonable suspicion of criminal activity, the Trooper had an objectively reasonable and articulable suspicion that illegal activity had occurred. First, the defendant's plans were unlikely – the rental papers indicated defendant picked up the vehicle on March 17, 2007 at 9:00 a.m., and that the vehicle was rented for a one-way trip from Denver to Chicago, to be returned on March 19, 2007 at 9:00 a.m. The trip would take approximately sixteen hours of actual driving while driving at 70 m.p.h., not accounting for stop breaks. However, defendant was driving 60 m.p.h. at 5:20 in the evening and was still in western Kansas. Although defendant exhibited signs of fatigue and told the Trooper that he would stop to rest, the amount of time defendant allotted, along with his account that he worked construction, did not account for the time remaining in his travel itinerary. Defendant also did not possess construction tools, contrary to his assertion that he was a construction worker. Finally, the defendant appeared more nervous than Trooper Duffey normally observed in

a routine traffic stop.  Sweat built up on the defendant's brow and upper lip; defendant's hands were visibly shaking in the short time of the initial contact; and the defendant looked away when he answered questions.  Taken together, the facts exhibit that it was rational for the Trooper to possess reasonable suspicion of illegal activity.

C.  The Search:

After the consensual encounter, on the facts of the case, the defendant's consent to search was given freely and voluntarily.  The government must demonstrate that consent was freely and intelligently given, without express duress or coercion.  *United States v. Angulo-Fernandez*, 53 F.3d 1177, 1180 (10th Cir. 1995).  Specifically, defendant argues that the officer never told defendant he was free to go between the first encounter and the officer's request to ask more questions, thus demonstrating that defendant did not voluntarily submit to the search.  However, the defendant gave specific and unequivocal consent; there is no evidence of duress or coercion. Simply stated, Trooper Duffey asked the defendant if he could search the vehicle, to which the defendant consented.  The defendant exited the vehicle and stood at the front of the vehicle upon Trooper Duffey's request.  The defendant properly consented to the search.

Finally, the Trooper's search was not outside the scope of defendant's consent.  The Supreme Court and Tenth Circuit have held that:

> [G]eneral consent to search a particular area is reasonably understood to extend to a search of any container within that area which could contain the items being searched for unless the suspect indicates that he wishes to terminate or limit the search.

*U.S. v. Jones*, No. 07-40002, WL 2258451, at * 14 (D. Kan. Aug. 7, 2007).  Illegal drugs fit into suitcases, which would lend a reasonable person to know that consent to search included a search

of the suitcases for narcotics. *See Florida v. Jimeno*, 500 U.S. 248, 252 (1991) (holding that if a consent to search would be reasonably understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization). *See also U.S. v. Marquez*, 337 F.3d 1203, 1206 (10th Cir. 2003) (citing *Jimeno*, 500 U.S. at 252) (finding that it was objectively reasonable for police to conclude that general consent to search defendant's car included consent to search containers within the car that might bear drugs). Recently in *U.S. v. Gallardo*, No. 06-3214, – F. 3d –, 2007 WL 2176374 , at * 7 (8th Cir. July 31, 2007), the Eighth Circuit affirmed the lower court's denial of a motion to suppress based on an allegedly illegal search. In *Gallardo*, the defendant was stopped as part of a traffic stop and was asked, in Spanish, whether the police could search the car. The defendant answered that he had no problem with the search. While defendant remained in the squad car, the officers opened the hood of the car and noticed an indentation in the engine's firewall that had been filled with auto-body repair putty, then covered with fresh paint. The court noted that the exchange between the officer and defendant left no doubt that illegal drugs would be the subject of the search.

Specifically, immediately prior to the asking for consent to search the vehicle, the officer asked defendant several times if he had drugs in the truck. Additionally, the court noted, the defendant placed no qualifications upon his consent. *Id*. Moreover, the court rejected defendant's argument that he was deprived of an opportunity to withdraw or limit the scope of the consent after the search began because the officer told him to sit in the squad car during the search:

> Even assuming that the searching officers had some independent duty to ensure Gallardo an opportunity to withdraw consent after the search began – and Gallardo offers no authority suggesting that such

8

a duty exists – the facts here do not compel the conclusion that Gallardo lacked such an opportunity. The squad car was parked immediately behind Gallardo's truck. Gallardo was not handcuffed, and he sat in the front seat of the squad car for the duration of the search. If Gallardo wished to withdraw his consent, there is no evidence that he was unable to do so – particularly because Gallardo made no attempt to attract the attention of the officers once the search began.

*Id*.

The defendant did not limit his consent to the search, did not object to the search, and did not withdraw his consent. Specifically, Trooper Duffey asked the defendant if he was carrying any illegal drugs or firearms prior to asking for consent to search the vehicle. Defendant then had an opportunity, consistent with *Gallardo*, to object to a search of specific items because he was in front of the SUV and was not handcuffed. Similar to the defendant in *Gallardo*, who was not in the direct line of sight to the search of the car hood, defendant in the present case was at the front of the car when the officer searched the rear of the car. However, as the court in *Gallardo* noted, the facts do not lead to the conclusion that defendant lacked an opportunity to withdraw his consent because he was not handcuffed and was at the front of the car, with easy access to communicate to Trooper Duffey. Therefore, the search was properly within defendant's consent.

IT IS ACCORDINGLY ORDERED this 14th day of August, 2007, that defendant's motion (Dkt. No. 12) is denied.

s/ J. Thomas Marten
J. THOMAS MARTEN, JUDGE